EARLE PRATT *vs.* PHILIP G. O'HARA.

Sagadahoc.     Opinion, March 6, 1937.

*Edward W. Bridgham*
*Ralph O. Dale,* for plaintiff.
*John P. Carey,* for defendant.

SITTING : DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MAN-SER, JJ.

THAXTER, J. This action to recover for personal injuries, alleged by the plaintiff to have been caused by the defendant's negligence, was tried before a jury. After a verdict for the plaintiff, the defendant filed a general motion for a new trial.

The plaintiff in the afternoon of February 25, 1936, was in the Columbia Hotel in Bath, and bought there some drinks of the defendant, O'Hara, who was employed at the hotel. The plaintiff became intoxicated, and the defendant, assisted by one William A. Staples, undertook to drive the plaintiff to his home in an automobile. That the plaintiff finally arrived home with a broken leg is about the only circumstance which seems to be admitted by all.

The defendant's negligence is set forth in the writ in the following language: "the said defendant unmindful of his duty, as aforesaid, caused his said automobile to stop on said Valley Road, so that the said plaintiff could leave the same, and as the said plaintiff was alighting from the said automobile wherein he was riding, the defendant suddenly and abruptly, without any notice or warning to the said plaintiff, who was at all times in the exercise of due care, started his said automobile in motion, so that the wheels of the said automobile ran over the body of the said plaintiff, severely crushing the right leg of the plaintiff in two places, and fracturing the same at the ankle and between the ankle and knee." In another count there is substantially the same allegation with the further statement that the defendant suddenly and abruptly started the automobile, while the plaintiff was alighting and before he was entirely clear of the car.

The defendant introduced some evidence to the effect that the plaintiff suffered his injury during a scuffle with a man named Jones

at the hotel before he ever left to go home. The jury was, however, justified in finding that the plaintiff suffered his broken leg while getting out of the automobile at Valley Road.

The testimony of the plaintiff on the one hand and of Staples and of the defendant on the other, who were the only three present, when the plaintiff claims to have been hurt, is sharply conflicting; but neither the plaintiff's evidence nor the defendant's tends in the slightest degree to support the allegation in the writ, nor in fact to show that the defendant was negligent in any other particular.

Two separate times on direct examination the plaintiff stated that he opened the door, got out of the automobile while it was in motion, and slipped under the rear wheel. Perhaps it is advisable to give his version of the occurrence in his own words.

"When we got down here (indicating), I said, 'I live on Dummer Street,' and O'Hara told Staples, 'Shove him out — put him out,' so when we got up here I opened up the door to get out, and they didn't stop at all, and I stepped off and had hold the side of the door and went down against the snowbank and underneath the car and they run over me."

It is true that subsequently the plaintiff was recalled, and in response to a leading question stated that he got out after the car had stopped; but even then he made no claim, as alleged in his declaration, that the car suddenly started as he was alighting.

The testimony of the defendant and of Staples is that they stopped the car, took the plaintiff out by the left rear door instead of by the right as claimed by him, and led him around the rear. Whatever may have happened, they left him in a snowbank in front of what they supposed was his house, and, apparently not wishing to encounter the ire of the members of his family, drove off. Not being altogether satisfied, however, that he could make the short distance to his front door, they drove around the square, and, on coming back and seeing him still resting in the snow, got out, and then learned that he was not in front of his own house after all. He was bundled into the car again, and finally was delivered at his own home, where he seems to have been welcomed none too sympathetically by his wife. Apparently Staples was also intoxicated, but there

126

is not the slightest evidence that the defendant was at all under the influence of liquor. It seems to have been that kind of an accident which sometimes overtakes one who has imbibed too freely.

Plaintiff's counsel have cited numerous cases relating to the duty which is owed under such circumstances to a man who is drunk. With these authorities we are in entire accord. But the verdict of the jury is only explainable on the theory that they felt that one, who undertakes to see a drunken man home, becomes an insurer of his safe arrival. Such is not the law. Some breach of the duty owed to the plaintiff should have been shown to justify a verdict in his favor.

Counsel call attention to the plaintiff's testimony to the effect that the defendant told Staples to shove the plaintiff out of the car; and it is claimed that thereby the plaintiff was put in fear and jumped out. Such conclusion is hardly warranted. In any event, according to the plaintiff's final version of the occurrence, this remark was made after the car had stopped.

The verdict of a jury must not be lightly set aside. There must, however, be some evidence to support it. Here there is none, and the entry must be

*Motion sustained.*
*New trial granted.*